# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3453
_____

United States of America

*Plaintiff - Appellee*

v.

Mark A. Whitworth

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri
_____

Submitted: November 15, 2023
Filed: July 11, 2024
_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

A jury convicted Mark Whitworth of conspiring to distribute methamphetamine and possessing methamphetamine with the intent to distribute. The district court[1] imposed a sentence of 235 months of imprisonment. Whitworth

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

appeals, challenging the district court's[2] striking of a potential juror from the venire panel, admission of testimony suggesting Whitworth had a prior felony or bad act, and calculation of the offense level for sentencing. We affirm the district court's judgment.

## I. Background

After learning of Whitworth's possible involvement in methamphetamine distribution, Missouri State Highway Patrol officers executed a search warrant of Whitworth's residence and surrounding property, including a shed located about ten yards behind the residence. Whitworth, along with his wife, Rose, and co-conspirator Russell Walker, were all on the property during the search—Whitworth in the front yard, Rose in the residence, and Walker in the shed.

When searching the shed, officers found bags containing methamphetamine, Ziploc bags, a digital scale with powdery residue, a police scanner, glass pipes, two shotguns, ammunition, and both Whitworth's and Walker's mail. Officers also found a surveillance camera on the shed's exterior, a closed-circuit television displaying the camera feed, and a speaker system that alerted when anybody walked between the residence and the shed. Inside the residence, officers found and seized $6,000 in cash located in a safe in Whitworth's bedroom. Officers found and seized a cell phone on Whitworth that had text messages indicating he was selling drugs.

A grand jury indicted Whitworth and charged him with two counts: (1) conspiring to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; and (2) possessing with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Before Whitworth's trial, Walker pled guilty to conspiring to distribute methamphetamine.

[2]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri. After the jury reached its verdict, the case was reassigned to Judge Kays.

At trial, the government sought to prove Whitworth conspired with Walker to sell methamphetamine out of the shed. The government called Walker as one of its witnesses. Walker testified he began helping Whitworth sell methamphetamine out of the shed while he lived rent-free at the residence. According to Walker, Whitworth obtained new methamphetamine to sell a couple of times per week. The government called another witness who testified he observed methamphetamine deals on Whitworth's current property and had himself purchased methamphetamine from Whitworth.[3] Whitworth's counsel argued to the jury that Walker was selling the methamphetamine alone and Whitworth was not involved.

The jury found Whitworth guilty on both counts. The district court imposed a sentence of 235 months of imprisonment, which was at the bottom of the calculated advisory sentencing range under the United States Sentencing Guidelines Manual (U.S.S.G. or Guidelines).

## II. Analysis

On appeal, Whitworth attacks both his conviction and his sentence. Whitworth challenges his conviction in two ways. He argues the district court abused its discretion by striking for cause a potential juror based on the judge's personal relationship with her and her family. He also argues the district court wrongly permitted testimony from an officer suggesting Whitworth had a prior felony. Finally, Whitworth argues the district court erred when calculating his Guidelines range for purposes of sentencing by improperly applying an aggravated role enhancement under U.S.S.G. § 3B1.1(c). We address each argument in turn.

---

[3]According to this witness, Whitworth had the same shed at a previous residence. The witness testified he purchased the methamphetamine from Whitworth at this shed at his previous residence.

## A. Striking Potential Juror

Whitworth argues he is entitled to a new trial because the district court wrongly struck from the venire a potential juror identified as J.M. The judge struck J.M. for cause, explaining his relationship with her was "too close looking" because he attended the same church as J.M.'s family, both of J.M.'s parents were attorneys, her father was on the judge's conflict list, he had numerous conversations with J.M., and he had given J.M. a tour of a law school. Whitworth argues none of these facts indicate J.M. could not fulfill her duties as a juror fairly and impartially, and thus it was improper to strike her for cause.

"We review the district court's decision to strike a prospective juror for cause for abuse of discretion." *United States v. Ganter*, 3 F.4th 1002, 1008 (8th Cir. 2021).[4] "The district court is given broad discretion in determining whether to strike jurors for cause because it is in the best position to assess the demeanor and credibility of the prospective jurors." *United States v. Elliott*, 89 F.3d 1360, 1365 (8th Cir. 1996). In order to reverse the district court's decision to strike J.M., Whitworth "must convince the appellate court that the [district] court had no 'sound basis' for its decision[,]" *Ganter*, 3 F.4th at 1008, and he suffered "actual prejudice" from the decision, *United States v. Oritz*, 315 F.3d 873, 888 (8th Cir. 2002).

---

[4]According to the government, "[t]here is 'no legally cognizable right to have any particular juror participate in a defendant's case.'" *United States v. Cardena*, 842 F.3d 959, 973 (7th Cir. 2016) (cleaned up) (quoting *United States v. Polichemi*, 201 F.3d 858, 865 (7th Cir. 2000)). Thus, the government contends we should follow the Seventh Circuit and hold Whitworth's challenge is unreviewable. *See id.* at 973–74 (explaining though a defendant may challenge on appeal a district court's decision *not to strike* a biased juror for cause, a defendant may not challenge a district court's decision *to strike* a particular juror). Whatever the merits of the Seventh Circuit's approach, it conflicts with our precedent of reviewing such challenges under a deferential abuse of discretion standard, *see Ganter*, 3 F.4th at 1008, which we are not free to ignore, *see United States v. Rethford*, 85 F.4th 895, 897 (8th Cir. 2023) (recognizing a panel is bound by the decision of a prior panel).

Whitworth cannot meet this standard. We do question whether the district court's relationship with J.M. and her family necessitated striking J.M. from the venire. Though a friendly judge-litigant (or judge-attorney) relationship may create a conflict, such a relationship between a judge and a juror does not inherently raise the same concerns. But regardless of whether there was a "sound reason" for striking J.M. as a juror, an issue we do not resolve, Whitworth cannot prevail here because he has not shown he was prejudiced by the district court's decision. Based on the record before us, there is simply no way to know if and how J.M.'s presence on the jury would have impacted the proceedings. Accordingly, we refuse to disturb the jury's verdict.

## B. Evidentiary Challenges

We next address Whitworth's challenges regarding testimony from Seargent Greg Primm of the Missouri State Highway Patrol, one of the officers who searched Whitworth's property. Whitworth argues the district court twice abused its discretion in its handling of Sgt. Primm's testimony. First, Whitworth maintains the district court erred when it permitted the government, over his relevance objection, to ask Sgt. Primm "why" law enforcement seized two shotguns and ammunition from the shed. Second, Whitworth argues the district court erred by denying his request for a mistrial after Sgt. Primm answered the question by stating: "Whenever we find a distribution amount of drugs, firearms are illegal to be possessed with drugs. So we seized them as part of that. And also . . . Mark Whitworth is prohibited from having weapons."

We begin by analyzing the district court's decision to permit Sgt. Primm to answer the question of why he seized the firearms. Because Whitworth properly objected, we apply "an abuse of discretion standard," under which we give great deference to the district court's balancing of the probative value of the evidence against its prejudicial impact. *See United States v. Edwards*, 65 F.4th 996, 998–99 (8th Cir. 2023). For us to reverse, an improper evidentiary ruling must have "affected the defendant's substantial rights or had more than a slight influence on

the verdict." *United States v. Brandon*, 64 F.4th 1009, 1020 (8th Cir. 2023) (quoting *United States v. Vaca*, 38 F.4th 718, 720 (8th Cir. 2022)).

The district court did not err by overruling Whitworth's objection to the government's question. As the district court explained, the evidence of the guns in the shed was "relevant evidence" and "its probative value [was] not substantially outweighed by its prejudice, given the fact that there were distribution quantities of drugs allegedly found in the shed and the guns were in close proximity[.]" Put another way, the guns provided probative evidence that the shed was the center of a methamphetamine distribution operation, rather than simply a place where a user kept his drugs hidden away. *See, e.g.*, *United States v. Boyd*, 180 F.3d 967, 980–81 (8th Cir. 1999) (holding the evidence was sufficient to convict the defendant for intent to distribute cocaine because a gun was located next to the drugs). Thus, there was nothing improper with the government attorney's question and the information it sought to elicit.

Whitworth's second argument is stronger. Whitworth argues the last part of Sgt. Primm's answer—that the guns were seized because "Mark Whitworth is prohibited from having weapons"—allowed the jury to infer Whitworth was a criminal, a bad actor, or someone dangerous. Whitworth claims this "type of 'character-based conclusion' means the evidence was unfairly prejudicial[,]" and the district court should have declared a mistrial.

"We review a district court's denial of a motion for a mistrial for abuse of discretion." *United States v. John*, 27 F.4th 644, 649 (8th Cir. 2022). "When analyzing the prejudicial effect of improper testimony, consideration should be given to the context of the error along with the strength of the evidence of guilt." *Id.* "Ordinarily, a jury's exposure to improper testimony can be cured by relief less drastic than a mistrial, such as instruction to the jury to disregard the testimony." *Id.* at 649–50. After Whitworth moved for a mistrial, the district court offered to strike the testimony or provide a curative limiting instruction. Whitworth declined the district court's offer to do either, instead arguing mistrial was the only appropriate

remedy. By making this choice, Whitworth "effectively 'waived his right to appeal the denial of his motion for a mistrial as to any prejudice that would have been cured by such an instruction.'" *United States v. Davis*, 867 F.3d 1021, 1032 (8th Cir. 2017) (quoting *United States v. Petrovic*, 701 F.3d 849, 857 (8th Cir. 2012)). "Where such an instruction is . . . waived, we will affirm a conviction where there was substantial evidence of guilt." *Id.* (cleaned up) (quoting *United States v. Big Eagle*, 702 F.3d 1125, 1132 (8th Cir. 2013)).

Substantial evidence of guilt exists here. Indeed, there was substantial physical evidence seized from Whitworth's property indicating Whitworth participated in the distribution of methamphetamine. This included: (1) the methamphetamine, drug paraphernalia, firearms, a radio scanner, and a security camera found in Whitworth's shed; (2) $6,000 in cash found in a safe in Whitworth's room; and (3) a cell phone with incriminating texts to and from Whitworth implicating him in drug sales. Moreover, the jury heard testimony from Walker that Whitworth sold methamphetamine out of the shed, obtained new methamphetamine to sell a couple of times a week, and allowed Walker to live on the residence for free so long as he helped complete methamphetamine transactions when Whitworth was unavailable. The jury also heard testimony from another individual who claimed he bought and bartered for methamphetamine from Whitworth. Because Whitworth declined a curative instruction and there was substantial evidence of his guilt from an array of sources, we will not disturb the jury's verdict based on Sgt. Primm's arguably improper testimony. *See United States v. Cole*, 380 F.3d 422, 427 (8th Cir. 2004) ("In the face of the strong evidence and wide array of testimony against [the defendant], one objectionable statement by a prosecution witness was not sufficient to create prejudicial error.").

## C. Aggravated Role Enhancement

Whitworth also challenges the district court's application of a two-level increase to his total offense level based on his role in the offense. *See* U.S.S.G. § 3B1.1(c). Whitworth argues the government failed to show by a preponderance of

evidence he managed or supervised anyone. Reviewing the district court's decision for clear error, *see United States v. Thomas*, 97 F.4th 1139, 1144 (8th Cir. 2024), we affirm.

"Section 3B1.1(c) of the . . . Guidelines provides for a two-level increase in a defendant's offense level if he supervised or managed another individual in one or more drug transactions." *Id.* The record before the district court supports a finding that Whitworth supervised or managed Walker in methamphetamine transactions. According to Walker, he lived rent-free in the Whitworth's trailer in exchange for "help[ing] out" around the property. Eventually, this "help" included selling methamphetamine out of Whitworth's shed when Whitworth was unavailable. Walker claimed it was Whitworth who purchased, picked up, and packaged the methamphetamine on a weekly basis. Walker would put the cash he received for the methamphetamine into a drawer in the shed, which Whitworth would collect. All this evidence indicated Whitworth was "the 'driving force' behind the crime[s]." *United States v. Irlmeier*, 750 F.3d 759, 764 (8th Cir. 2014) (quoting *United States v. Rodgers*, 122 F.3d 1129, 1134 (8th Cir. 1997)). The district court thus did not clearly err in finding Whitworth supervised or managed Walker in the conspiracy to distribute methamphetamine, which is enough to support application of § 3B1.1(c). *See United States v. House*, 923 F.3d 512, 518 (8th Cir. 2019) ("A defendant may be subject to the § 3B1.1 enhancement where he manages or supervises only one other participant in the conspiracy or if the management activity was limited to a single transaction.").

### III. Conclusion

We affirm the district court's judgment.

_____